UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00639-CHL

MICHAEL D.,[1]                                                            **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**                       **Defendant.**

## MEMORANDUM OPINION AND ORDER

Before the Court is the Complaint filed by Plaintiff, Michael D. ("Claimant"). Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) Claimant and the Commissioner each filed a Fact and Law Summary and/or supporting brief. (DNs 12, 15, 16.) Claimant also filed a reply. (DN 17.) The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 7.) Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

## I.    BACKGROUND

On August 5, 2022, Claimant applied for disability insurance benefits under Title II ("DIB"). (R. at 18, 67-68, 79-80, 162-73.) His applications alleged disability beginning on January 13, 2022, due to chronic cough, difficulty breathing, issues with both knees and feet, curved lumbar spine, cervical spinal fusion, misaligned hips, post-traumatic stress disorder ("PTSD"), severe anxiety with panic attacks, and depression. (*Id.* at 68, 80.) Claimant's application was denied initially and again on reconsideration. (*Id.* at 91-95, 97-101.)

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

1

At Claimant's request, Administrative Law Judge ("ALJ") William C. Zuber conducted a hearing on Claimant's application on June 28, 2023. (*Id*. at 36-66, 102.) Claimant attended the hearing with his attorney. (*Id.* at 38.) An impartial vocational expert also participated in the hearing. (*Id.*)

During the hearing, Claimant testified to the following.[2] His primary care provider prescribes his medication for his psychiatric symptoms and has recommended Claimant see a therapist. (*Id.* at 48.) When he took Zoloft, it caused him to turn into a "zombie" and socially withdraw from his wife, "work[,] and everything else." (*Id.* at 52.) He testified that he had previously seen a counselor through Veterans Affairs ("VA") Health Care but felt that they were not listening and the "experience wasn't very good at all." (*Id.* at 53, 48-49.) There are lots of things he doesn't like to think or talk about. (*Id.* at 53.) His new anxiety medication seems to help his mental health symptoms "a little," but his anxiety levels are still "bad at times" and don't "seem to really go down a whole lot even with the medication." (*Id.* at 57.) He does not drive; his wife drives him everywhere, and they normally do grocery pickup to avoid going into the grocery store. (*Id.* at 54.) He has generalized anxiety all the time. (*Id.* at 55.) His main triggers are loud noises and being in large groups. (*Id.* at 56.) He testified that he is constantly checking his surroundings when not at home and tries to sit with his back to the wall so no one will be behind him. (*Id.*) He doesn't want to talk to or deal with people in any way and keeps to himself. (*Id.* at 56-57.)

The ALJ issued an unfavorable decision on October 10, 2023. (*Id.* at 15-35.) Applying the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled, the ALJ made the following findings. First, the Claimant has not engaged in substantial gainful activity since January 13, 2022, his alleged onset date. (*Id.* at

---

[2] Because Claimant does not challenge the portions of the ALJ's decision regarding his physical impairments, the Court has not summarized Claimant's testimony about his physical impairments and limitations herein.

20.)    Second, Claimant had the following severe impairments: degenerative disc disease, degenerative joint disease of the knees, asthma, anxiety, PTSD, and depression. (*Id.*) Third, Claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.*) Fourth, Claimant has the residual functional capacity ("RFC") to perform light work with the following exceptions:

> the claimant can understand, remember, and carry out detailed, but not complex tasks requiring no more than frequent independent judgment, and involving no more than frequent variation. The claimant can occasionally have non-confrontational interactions with coworkers, supervisors, and the general public. The claimant can maintain concentration, persist at tasks, and maintain pace for two-hour periods. The claimant can frequently climb ramps and stairs, but can only occasionally climb ladders, ropes, and scaffolds. The claimant can frequently stoop, kneel, crawl, and crouch. The claimant can work in environments with frequent exposures to vibrations, dust, fumes, gas, odors, dangerous machinery, and unprotected heights.

(*Id.* at 23.). Additionally at step four, the ALJ found that Claimant was unable to perform any of his past relevant work as an electronics customer service representative, a customer service representative, and tank mechanic. (*Id.* at 28.) Fifth, and finally, considering Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could perform. (*Id.* at 29.) The ALJ concluded that Claimant was not under a disability from January 13, 2022, through his date last insured. (*Id.* at 30.)

Claimant subsequently requested an appeal to the Appeals Council, which denied his request for review on October 24, 2023. (*Id.* at 1-5, 159-61.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2024); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Accordingly, Claimant timely filed this action on December 5, 2023. (DN 1.)

## II.    DISCUSSION

The Social Security Act authorizes payments of DIB to persons with disabilities.  *See* 42 U.S.C. §§ 401-434.  An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a) (2024).

### A.    Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way").  However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record.  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

**B.    Five-Step Sequential Evaluation Process for Evaluating Disability**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled.  20 C.F.R. § 404.1520 (2024).  In summary, the evaluation process proceeds as follows:

(1)    Is the claimant involved in substantial gainful activity?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," proceed to the next step.

(2)    Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[3] and significantly limits his or her physical or mental ability to do basic work activities?  If the answer is "no," the claimant is not disabled.  If the answer is "yes," proceed to the next step.

(3)    Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1?  If the answer is "yes," the claimant is disabled.  If the answer is "no," proceed to the next step.

(4)    Does the claimant have the RFC to return to his or her past relevant work?  If the answer is "yes," then the claimant is not disabled.  If the answer is "no," proceed to the next step.

(5)    Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," the claimant is disabled.

20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of proof with respect to steps one through four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing.  *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).  The claimant

---

[3] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months.  20 C.F.R. § 404.1509 (2024).

always retains the burden of proving lack of RFC.  *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C.    Claimant's Contentions

Claimant challenged the ALJ's numerical finding no. 5 regarding Claimant's RFC.  (DNs 12, 15, 17.)  Claimant argued that the ALJ did not follow the rules set forth in 20 C.F.R. § 404.1520c for evaluating opinion evidence and that his evaluation and explanation of his analysis of the opinion of consultative examiner ("CE") Brittainy Q. Dial, MS ("CE Dial") was procedurally deficient because it did not contain a sufficient articulation regarding the consistency and supportability factors the ALJ was required by the regulation to discuss in his opinion.  (DN 12, at PageID # 964-73; DN 15; DN 17.)  Specifically, Claimant argued that the ALJ's rationale as to the supportability and consistency factors was "simply inaccurate" and that "when the only explanation given is inaccurate[,] the regulatory reason-giving requirement is unsatisfied."  (DN 12, at PageID # 966; DN 17, at PageID # 998.)

The new regulations for evaluating medical opinions are applicable to Claimant's case because he filed his application after March 27, 2017.  Pursuant to 20 C.F.R. § 404.1520c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source.[4]  20 C.F.R. § 404.1520c(a) (2024). Instead, an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors.  20 C.F.R. § 404.1520c(a), (c).  The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical

---

[4] This language indicates that the new regulation has done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions.  20 C.F.R. § 404.1527(c)(2) (2024).

source's medical opinions." 20 C.F.R. § 404.1520c(a), (b)(2). However, the regulations state that "it is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions . . . in [the] case record"; thus, an ALJ is not required to explicitly discuss how he or she weighed the factors of relationship with the claimant,[5] specialization, and other factors.[6] 20 C.F.R. § 404.1520c(b)(1)-(2).

The Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability and consistency factors" under the new regulations. 20 C.F.R. § 404.1520c(b). *But see Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *2 (6th Cir. Sept. 28, 2023) (noting that the new regulations "substantially reduce[ ] the ALJ's obligation to explain the basis for his or her assessment of medical opinions"); *Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 822 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding that "[t]he ALJ did not clearly analyze the supportability and consistency of the state consultants' assessments, as compared to other evidence in the record which supported [the plaintiff]'s claims"). However, district courts applying the new regulations within this circuit consistently apply the articulation requirement literally. *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. Aug. 13, 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source."

---

[5] In assessing this factor, the regulations require an ALJ to consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. § 404.1520c(c)(3).

[6] The regulations provide that an ALJ will consider any "other factors that tend to support or contradict a medical opinion." 20 C.F.R. § 404.1520c(c)(5). These factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim," "whether new evidence [ ] receive[d] after the medical source made his or her medical opinion . . . makes the medical opinion . . . more or less persuasive," and whether the medical source has "an understanding of [the] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(5).

(emphasis in original)); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions").

Claimant's arguments solely related to alleged errors in his consideration of CE Dial's opinion. (DN 12, at PageID # 964-73; DN 15; DN 17.) Having reviewed CE Dial's opinion, the ALJ's decision, and the relevant portions of the record, the Court disagrees and finds no procedural or substantive error in the ALJ's decision.

CE Dial performed her examination of Claimant on August 29, 2022. (R. at 438-43.) Her report summarized Claimant's background, employment history, mental health treatment history, and daily activities based on Claimant's reports during her examination. (*Id.* at 439-40.) In her mental status exam notes, CE Dial documented fidgety motor activity; normal hygiene; appropriate dress for the weather; adequate attention and concentration; appropriate thought content; constricted facial expressions; limited eye contact; guarded but cooperative behavior; intact immediate, recent, and remote memory; average overall intellectual functioning; intact abstract reasoning, judgment, reality-testing, and insight; anxious affect; depressed mood; limited decision-making; poor coping skills; and physical and interpersonal skill deficits. (*Id.* at 440-41.) CE Dial documented her diagnostic impressions as PSTD, panic disorder, and major depressive disorder. (*Id.* at 441.) Based on her evaluation, CE Dial opined that Claimant was slightly limited in his

capacity to understand, remember, and carry out instructions toward performance of simple repetitive tasks; moderately limited in his ability to sustain attention and concentration towards performance of simple repetitive tasks; and markedly limited in his ability to tolerate the stress and pressure of day-to-day employment and capacity to respond appropriately to supervision, coworkers, and work pressure in a work setting. (*Id.* at 442.)

In his opinion, the ALJ found CE Dial's opinion unpersuasive and unsupported by her examination findings and the overall record as a whole. (*Id.* at 27.) He explained,

> Ms. Dial's opinion is not fully consistent with the longitudinal medical record, including treatment records from Veteran's Administration Healthcare or with Ms. [Dial]'s own clinical observations of the claimant. Ms. [Dial] relies on the claimant's subjective complaints during the consultative examination and does not clinically correlate the report of symptoms with subjective findings on examination. While the evidence of record supports finding that the claimant has mild and moderate limitations on basic work-related tasks, the objective evidence does not support finding that the claimant has marked limitations in psychological functioning.[7]

(*Id.*) Claimant argued that this discussion did not comport with the ALJ's duty to discuss the supportability and consistency factors under 20 C.F.R. § 404.1520c.

As to supportability, which relates to the "objective medical evidence and supporting explanations presented by a medical source [ ] to support his or her medical opinion(s)," 20 C.F.R. § 404.1520c(1), Claimant disputed the ALJ's conclusion that CE Dial's opinion relied on the Claimant's subjective complaints without clinically correlating the report of symptoms with her own clinical observations of the Claimant. (DN 12, at PageID # 968-69.) Claimant pointed to CE Dial's notations of his "guarded, but cooperative" behavior, limited eye contact, and fidgety movement during CE's psychological exam as supporting her conclusion regarding marked

---

[7] After the first reference to "Ms. Dial," the ALJ then referenced "Ms. Shaw" in his analysis. This appears to be a typographical error. A review of the entire paragraph in the context of the ALJ's overall decision suggests that the ALJ intended to refer to CE Dial and her opinion. For this reason, the Court reviews the ALJ's analysis assuming the altered references in the above quote to be references to CE Dial. Claimant took the same approach in his brief.

limitations in certain areas.  (*Id.* at 969 (citing R. at 440).)  However, the ALJ's statement about

CE Dial's findings is accurate.  The record shows that during her exam, CE Dial made numerous

clinical findings, the vast majority of which were overwhelmingly normal with exceptions in the

areas noted by Claimant.  (*Id.* at 440-41.)  Consistent with the ALJ's statement, the record shows

that CE Dial's opinions are not in line with her objective observations, which noted that Claimant

was cooperative, responded appropriately, dressed appropriately, was attentive and able to

concentrate, had a normal rate and volume of speech, had appropriate thought content to the mood

and circumstances, had logical and goal directed organizations, was well oriented, had intact recent

memory, had intact remote memory, had average overall intellectual functioning, had intact

abstract reasoning, and had intact judgement.  (*Id.*)  The Court finds that these and the other

objective findings in CE Dial's report are sufficient to undermine her conclusions regarding

marked limitations as found by the ALJ.  Claimant cited no authority preventing the ALJ from

relying on the discrepancy between Claimant's reported symptoms and CE Dial's objective

findings.  Thus, the Court finds that the ALJ's analysis was both accurate and sufficient to comport

with the regulatory articulation requirement.

As to consistency, which concerns the relation of a medical source's opinion to "the

evidence from other medical sources and nonmedical sources in the claim," 20 C.F.R. §

404.1520c(c)(2), Claimant argued that the ALJ's assertion that CE Dial's opinion was not

supported by the longitudinal record was "simply inaccurate."  (DN 12, at PageID # 966.)

Specifically, Claimant argued that "[t]he records from the VA are not at odds with the restrictions

assessed by Psychologist Dial during the agency's consultative evaluation in this case," citing

certain specific VA records.  (*Id.* (citing R. at 757-60, 804-06, 918).)  He also pointed to the

opinions of his primary care providers Dr. David Bercovici ("Dr. Bercovici") and Liane M. Dean,

APRN ("APRN Deal"), arguing that those providers' opinions were also consistent with CE Dial's opined limitations. (DN 12, at PageID # 966-68.) Claimant argued that the ALJ's consistency analysis "misconstrued the record," summarizing, "[T]he ALJ d[id] not adequately discuss the relevant evidence, and he ultimately offers no valid rationale" for finding CE Dial's opined limits unpersuasive. (*Id.* at 968.)

While the ALJ did not specifically summarize the VA records—which predate Claimant's January 13, 2022, alleged onset date by over five years—in his decision, the ALJ did summarize the Claimant's mental health treatment between August 2018 and October 2022. (R. at 25-26.) He noted that an October 11, 2022, VA Healthcare assessment found that Claimant did not have PTSD and tied Claimant's anxiety and panic attacks to other conditions. (*Id.* at 25 (citing *id.* at 751-61).) He emphasized that Claimant has largely been followed by his primary care provider for his mental symptoms, who prescribed psychotropic medications "well prior to early 2022." (*Id.* at 25 (citing *id.* at 762-95).) The ALJ noted that Claimant did not receive specialized mental health treatment and had a normal mental status exam in October 2022 by his primary care provider. (*Id.* at 25-26 (citing *id.* at 599).) The ALJ found that his conclusion regarding Claimant's mental RFC was supported "[c]onsidering the longitudinal medical record particularly the clinical assessments of the claimant's functioning, lack of reports of any side effects from psychotropic medications during the years the claimant took medications, and the claimant's ability to engage in self-care and activities of daily living." (*Id.* at 26.) Regarding Claimant's daily activities, the ALJ summarized that Claimant "engage[d] in a wide range of activities in his daily life," "had a loving relationship with his spouse," and "undertook the adoption of a teenage child with behavior difficulties." (*Id.*) The ALJ noted that despite Claimant's reports that he could not concentrate or remember to pay bills or satisfy other obligations, Claimant's providers did not document "deficits

11

in memory, cognition, or concentration." (*Id.*)  And regarding Claimant's lack of specialized

mental health treatment, the ALJ noted that Claimant did not allege and the record did not support

that Claimant "lack[ed] access to medical treatment or a lack of resources." (*Id.*)  Thus, the ALJ

concluded that Claimant's "allegations regarding the frequency, duration, and limiting effect of

his symptoms [we]re not consistent with the objective evidence of record." (*Id.*)

These conclusions by the ALJ are not inconsistent with the VA records dating back to early

2016.  Claimant had a series of visits with providers at the VA to establish care beginning in 2016.

(*Id.* at 796-923.)  During February 16, 2016, assessments, providers noted that Claimant was

battling depression and sleep issues but still documented largely normal mental status findings

including that Claimant was oriented to the three spheres, had fluent speech, showed intact

judgment and congruent mood, was alert and oriented, demonstrated hygiene within normal limits,

exhibited no unusual movements, had a calm but guarded attitude, had logical thought process,

showed perception within normal limits, and demonstrated no cognition defects all despite

presenting with anxious and depressed mood.  (*Id.* at 837-43, 918-21.)  Despite his wife reporting

via telephone that Claimant was shy, not very talkative, could not keep a job, found it hard to be

around people, found it hard to be around loud noises, and could get angry and irritable, during his

mental health intake consult on March 11, 2016, Claimant's provider made a number of normal

findings.  (*Id.* at 834-36, 804-12.)  The provider noted that Claimant had had no mental health

treatment before.  (*Id.* at 805.)  The provider documented the Claimant admitted social withdrawal

and depression that had been present for six years.  (*Id.* at 805-06.)  But in her mental status exam,

she found appropriate dress, cooperative/passive/guarded behavior, coherent thought content,

limited insight, intact judgment, anxious/depressed mood, flat affect, adequate fund of knowledge,

fair concentration, and fair memory, among other findings.  (*Id.* at 810.)  She noted that Claimant

appeared mildly anxious and made little eye contact.  (*Id.* at 812.)  While there are negative findings in this summary, they still do not rise to the level of the marked limitations opined by CE Dial particularly in light of the fact that Claimant managed to cooperate with the new VA providers with whom the record does not establish that he had had any interaction before.  Not to mention that VA records are from before Claimant had any mental health medications or treatment.  Thus, the Court finds the ALJ's conclusion that the VA records are inconsistent with CE Dial's opined limitations to be supported by the record.  The ALJ's analysis was both adequate to satisfy the regulatory requirement and supported by substantial evidence.

While under the heading of the ALJ's consistency analysis, the remainder of Claimant's argument appears to be a general challenge to the ALJ's RFC.  Claimant argued that CE Dial's opined limitations were consistent with the opinions of Dr. Bercovici and APRN Deal.  Dr. Bercovici was Claimant's primary care physician beginning in April 2018, and the record includes treatment records by Dr. Bercovici through June 2022.  In a March 24, 2022, email, Dr. Bercovici provided a narrative statement that Claimant lost his employment due to frequent absences and stated that Claimant's partner correlated Claimant's worsening depression to a medication he was taking.  (*Id.* at 734.)  The ALJ summarized Dr. Bercovici's opinion regarding the allegation that Claimant lost his job due to medication side effects in 2022 but criticized Dr. Bercovici's statement for its failure to "provide a specific opinion regarding the Claimant's functional capacity or limitations due to psychological impairments."  (*Id.* at 27.)  The ALJ found the opinion of Dr. Bercovici's "not persuasive" because his statement lacked clinical subjective findings and instead relied on "a lay person's conclusions regarding the effectiveness of a medication."  (*Id.*)  As the ALJ observed, Dr. Bercovici's statement does not appear to contain—and Claimant does not cite to—any subjective clinical findings on any examination and instead relies on Claimant's spouse's

subjective conclusions.  Also as observed by the ALJ, it does not contain any opined functional limitations.  Based on the foregoing, it was not error for the ALJ to find Dr. Bercovici's opinion unpersuasive and not include greater limitations in his RFC determination as a whole.

The ALJ also assessed a statement from APRN Dean.  (*Id.* at 27.)  But the ALJ found APRN Dean's opinion "not persuasive," noting that she "completed a check the box form" and "opined that the claimant is 'not employable' due to his psychological impairments."  (*Id.*)  The ALJ observed that APRN "Dean does not provide a detailed rationale that cites to objective findings in the record to support her conclusions."  (*Id.*)  The ALJ concluded that APRN "Dean's opinions regarding the frequency and severity of the claimant's psychological limitations on basic mental work tasks is not supported by the longitudinal medical record."  (*Id.*)  This is supported by the ALJ's summary of Claimant's medical records elsewhere in the ALJ's decision as detailed above, which simply did not substantiate the level of limitations assessed by either APRN Dean or CE Dial.  Claimant provided no citations to records showing that the boxes Nurse Dean checked on the Psychological Impairment Questionnaire and the conclusions she formed were based on objective evidence in the record.  Thus, it was not error for the ALJ to find Nurse Dean's opinion unpersuasive as part of his consistency analysis or his RFC determination as a whole.

Ultimately, having reviewed the record, including those records relied upon by the ALJ and the Claimant's characterization of the same, the Court finds that this is a case where the ALJ properly resolved conflicts in the evidence and supported his decision—including his analysis of CE Dial's opinion—with substantial evidence.  His analysis more than surpasses the threshold for substantial evidence, which is "not high."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting in part *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains

'sufficien[t] evidence' to support the agency's factual determinations.  And whatever the meaning

of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."

(internal citations omitted)).  Claimant did nothing more than point to other evidence in the record

he claimed supported an opposite conclusion to that reached by the ALJ.  However, having found

that his decision was supported by substantial evidence, this Court's role is not to second-guess

the ALJ's conclusions.  *Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108; *Ulman v. Comm'r of*

*Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).  Thus, the Court finds that the ALJ's RFC analysis is

supported by substantial evidence.

## III.    CONCLUSION AND ORDER

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**.  A

final judgment will be entered separately.

Colin H Lindsay, Magistrate Judge

United States District Court

February 28, 2025

cc:    Counsel of Record